| SAN JUAN AGRICULTURAL WATER USERS ASSOCIATION V. KNME-TV |

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**SAN JUAN AGRICULTURAL WATER USERS ASSOCIATION,**
**Plaintiff-Appellant,**
**v.**
**KNME-TV, BOARD OF EDUCATION OF THE ALBUQUERQUE PUBLIC SCHOOLS, REGENTS OF THE UNIVERSITY OF NEW MEXICO, JOHN D'ANTONIO, NEW MEXICO STATE ENGINEER, OFFICE OF THE NEW MEXICO STATE ENGINEER, NEW MEXICO INTERSTATE STREAM COMMISSION, and OFFICE OF THE GOVERNOR OF NEW MEXICO,**
**Defendants-Appellees.**

Docket No. A-1-CA-35839
COURT OF APPEALS OF NEW MEXICO
April 16, 2019

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY, Nan G. Nash, District Judge

**COUNSEL**

Victor R. Marshall & Associates, P.C., Victor R. Marshall, Albuquerque, NM, for Appellant

Long, Komer & Associates, P.A., Mark E. Komer, Santa Fe, NM, for Appellees.

Peifer, Hanson & Mullins, P.A., Gregory P. Williams, Albuquerque, NM, for Amicus New Mexico Foundation for Open Government

**JUDGES**

JACQUELINE R. MEDINA, Judge. WE CONCUR:  M. MONICA ZAMORA, Chief Judge, MILES HANISEE, Judge

**AUTHOR:** JACQUELINE R. MEDINA

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}**     This case raises three issues under the New Mexico Inspection of Public Records Act (IPRA), NMSA 1978, § 14-2-1 to -12 (1947, as amended through 2018). First, whether a request for "all documents" related to a television broadcast program can or should be interpreted to include video recordings within its scope. The district court decided it did not and we affirm that ruling. Second, whether a request for statutory damages under Section 14-2-11(C) can be premised on clarifications as to the scope of the request provided by the requester in subsequent communications, a complaint filed in district court to enforce the request, or in litigation documents. The district court held that liability for statutory damages must be based on the original request. We likewise affirm that ruling. Third, whether damages, costs, and reasonable attorney fees under Section 14-2-12(D) are available where inspection of public records is denied based on exemptions that later development of the law revealed never existed. The district court denied damages, costs, and attorney fees. We reverse the district court's ruling regarding costs and attorney fees, and remand for further proceedings regarding both.

## I.     FACTS AND PROCEDURAL HISTORY

**{2}**     In June 2007 the San Juan Agricultural Water Users Association (Plaintiff), acting through its agent, the Marshall law firm, submitted an IPRA request (June 2007 request) to: (1) KNME-TV (KNME); (2) Regents of the University of New Mexico (UNM); (3) the New Mexico Interstate Stream Commission (ISC); (4) Office of the New Mexico State Engineer (OSE); and others not involved in this appeal[1].

**{3}**     Plaintiff's June 2007 request was captioned as an "[i]nspection of [p]ublic [r]ecords [r]equest," and specifically sought inspection of "[a]ll documents relating to the program *The Water Haulers*, which was broadcast by KNME-TV." It also sought to inspect "[a]ll documents relating to the website *The Water Haulers*, . . . includ[ing] all of the related pages or documents included in or linked with this website." Defendants made some, but not all, of the requested material available for inspection.

**{4}**     In August 2007 Plaintiff filed an IPRA enforcement complaint seeking the production of public records, damages, injunctive relief, and attorney fees. Plaintiff asserted in its complaint that "[t]he defendants have not produced all of the public records covered by the June [2007] request" and sought "a court order compelling each of the defendants to make full production of all of the public records that were requested on June 12." Plaintiff also asserted that ISC and OSE failed to produce for inspection an eight-minute promotional video of *The Water Haulers* (eight-minute video).

**{5}**     In October 2007 Defendants moved to dismiss the case, alleging in part that Plaintiff lacked standing to enforce the June 2007 request. While the motion was pending, the records custodian for OSE and ISC supplemented their IPRA response by providing Plaintiff with ten additional documents relating to *The Water Haulers*. In November 2007 the KNME and UNM records custodian sent a letter to Plaintiff indicating that an additional 1,094 pages of documents were ready for inspection. This

---

[1]  Unless otherwise indicated, the four entities named above will collectively be referred to as Defendants.

letter also informed Plaintiff that inspection of some records was being denied based on a "[c]ountervailing public policy favoring protection of thought process documents." On December 19, 2007, KNME and UNM provided Plaintiff with a privilege log identifying the withheld documents and the claimed exemptions.

**{6}** In February 2008 the district court granted Defendants' motion to dismiss. Plaintiff appealed. We affirmed the dismissal in *San Juan Agric. Water Users Ass'n v. KNME-TV*, 2010-NMCA-012, 147 N.M. 643, 227 P.3d 612. The New Mexico Supreme Court reversed the dismissal as to Plaintiff and remanded the case to district court for further proceedings regarding Plaintiff's IPRA enforcement complaint. *San Juan Agric. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 45, 150 N.M. 64, 257 P.3d 884.

**{7}** In July 2012 the district court dismissed the case without prejudice for lack of prosecution. The district court later granted Plaintiff's motion to reinstate the case and ordered the parties to conduct mediation. After an unsuccessful mediation, Defendants served interrogatories and requests for production on Plaintiff. Defendants later moved to dismiss for Plaintiff's failures to prosecute, to respond to discovery requests, and to identify any documents it believed were being withheld. The district court denied the motion and directed Plaintiff to respond to the interrogatories and requests for production no later than October 15, 2013.

## A.    Additional Documents Made Available for Inspection

**{8}** In October 2013 KNME and UNM jointly provided documents they had previously denied inspection of in 2007. KNME and UNM claimed they were doing so because the law had changed. In October 2013 Plaintiff served discovery requests on Defendants seeking in part "all writings, reports, statements and tape recordings . . . by . . . any person having . . . knowledge or information pertaining to the . . . issue in this law suit."

**{9}** In January 2014 Plaintiff moved to compel the production of video tapes "from which the [*The Water Haulers*] program was produced" (master tapes). The district court granted the motion in part, and Plaintiff was allowed to inspect the master tapes.

**{10}** In July 2015 Defendants moved for summary judgment. The district court granted partial summary judgment to Defendants. The district court found that OSE and ISC's production of additional responsive documents to Plaintiff in October 2007 was untimely and that there were issues of fact whether Plaintiff was entitled to damages under Section 14-2-12. As to KNME and UNM, the district court found that Plaintiff demonstrated a disputed issue of material fact as to whether Plaintiff suffered damages as a result of delays in producing responsive documents from October 2007 through November 2007 and whether KNME and UNM complied with IPRA with regard to the documents they subsequently produced. The district court conducted a nonjury trial in November 2015, during which OSE and ISC provided Plaintiff with a copy of the eight-minute video.

## B.    District Court Ruling

**{11}** In December 2015 the district court entered its findings of fact and conclusions of law. With regard to the eight-minute video, the district court found: (1) Plaintiff did not request the eight-minute video in the June 2007 request; and (2) Plaintiff failed to prove the eight-minute video was within the scope of the June 2007 request. Based on these findings, the district court ruled that neither ISC nor OSE violated IPRA by failing to produce the video recording in response to Plaintiff's June 2007 request.

**{12}** As to the master tapes, the district court found: (1) the master tapes were not part of the June 2007 request; and (2) Plaintiff's January 2014 motion to compel marked the first time Plaintiff asked for the master tapes. The district court therefore ruled that KNME and UNM's failure to produce the master tapes was not a violation of IPRA, because it was reasonable for them to interpret the June 2007 request in a manner that did not include the master tapes. The district court also found that Plaintiff presented no evidence that any Defendant failed to produce other records.

**{13}** The district court awarded Plaintiff statutory damages under Section 14-2-11(C) for the period from June 16, 2007 through June 27, 2007, an award which Plaintiff does not contest on appeal. The district court concluded KNME and UNM acted reasonably by denying inspection of some documents in 2007, and later producing those documents following our Supreme Court's clarification of law regarding the unavailability of the exceptions relied upon by KNME and UNM in refusing to allow Plaintiff to inspect the withheld documents. *See Republican Party of N.M. v. N.M. Taxation & Revenue Dep't*, 2012-NMSC-026, ¶ 42, 283 P.3d 853 (disavowing case law "to the extent that it could be read to support the adoption of the deliberative process privilege"). The district court ruled that KNME and UNM's delay in issuing denials based on their claimed exceptions did not violate Section 14-2-11(C) in a manner supporting an award of statutory damages after June 27, 2007. The district court further found: (1) Plaintiff had not established by competent evidence any actual damages arising from the delay in producing the documents; and (2) Plaintiff was made whole by the production of the documents in 2013. Finally, the district court concluded that any documents produced after November 2007 were either: (1) not identified with reasonable particularity in the June 2007 request; or (2) were reasonably denied in 2007 and later produced for inspection in 2013.

**{14}** As to damages, costs, and attorney fees under Section 14-2-12(D), the district court awarded Plaintiff costs and attorney fees for the time period between June 27, 2007 and December 19, 2007, and denied Plaintiff relief for any damages, costs, and attorney fees incurred after December 19, 2007. The district court also appears to have denied Plaintiff damages, costs, and attorney fees for litigation expenses incurred after December 17, 2007, because: (1) all documents produced after November 2007 were either not within the scope of the original June 2007 request; or (2) were reasonably denied in 2007; and (3) Plaintiff was not successful in its enforcement action to inspect the records because Defendants produced the 2013 documents voluntarily.

## II.   STANDARD OF REVIEW

**{15}** To the extent Plaintiff challenges the district court's factual findings, we review the district court's determination that Plaintiff's June 2007 request did not seek inspection of recordings for substantial evidence. *See Vanderlugt v. Vanderlugt*, 2018-NMCA-073, ¶ 35, 429 P.3d 1269. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 12, 329 P.3d 658 (internal quotation marks and citation omitted).

**{16}** The issues raised in this appeal also require us to interpret provisions of IPRA. "Interpretation of the language of a statute is a question of law that we review de novo." *Faber v. King*, 2015-NMSC-015, ¶ 8, 348 P.3d 173. We construe IPRA in light of its purpose and interpret it "to mean, and to accomplish the ends sought to be accomplished by it." *San Juan*, 2011-NMSC-011, ¶ 14 (internal quotation marks and citation omitted).

**{17}** "In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *City of Albuquerque v. Montoya*, 2012-NMSC-007, ¶ 12, 274 P.3d 108 (alteration, internal quotation marks, and citation omitted). In addition to looking at the plain language of the statute, we "consider [its] history and background[,]" overall structure, and function in the comprehensive legislative scheme. *Faber*, 2015-NMSC-015, ¶ 9 (internal quotation marks and citation omitted).

**{18}** IPRA declares it "to be the public policy of this state[] that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." Section 14-2-5; *Pacheco v. Hudson*, 2018-NMSC-022, ¶ 23, 415 P.3d 505. We are further guided by the legislature's explicit declaration "that to provide persons with such information is an essential function of a representative government and an integral part of the routine duties of public officers and employees." Section 14-2-5.

## III.    DISCUSSION

### A.    The Eight-Minute Video and Master Tapes Were Not Responsive to Plaintiff's June 2007 Request

**{19}** Section 14-2-1(A) (2005) provides that "[e]very person has a right to inspect public records of this state except" when a public record falls into an enumerated exception. To initiate a written public records request, any person may contact a public body's records custodian and "identify the records sought with reasonable particularity." Section 14-2-8(C) (1993). IPRA defines public records to mean

> all documents, papers, letters, books, maps, tapes, photographs, recordings and other materials, regardless of physical form or characteristics, that are used, created, received, maintained or held by or

on behalf of any public body and relate to public business, whether or not the records are required by law to be created or maintained.

Section 14-2-6(E) (1993).

**{20}** When a public body receives a written IPRA request, IPRA obligates the public body's records custodian to either: (1) permit inspection of the requested public records immediately or as soon as practicable under the circumstances, but not later than fifteen days after receiving the request, Section 14-2-8(D) (1993); or (2) deny the written request by providing "the requester with a written explanation of the denial . . . within fifteen days after the request for inspection was received[,]" Section 14-2-11(B). Plaintiff contends the district court erred as a matter of fact and law when it ruled that the video and master tapes did not fall within the scope of its June 2007 request.

**{21}** The success of Plaintiff's argument rests on whether the video and master tapes were "responsive" to Plaintiff's June 2007 request. The term "responsive" does not appear in IPRA, but is "appropriately used by litigants to describe the nature of public records[.]" *Am. Civil Liberties Union of N.M. v. Duran*, 2016-NMCA-063, ¶ 27, 392 P.3d 181. A public record is "responsive" to an inspection request when the request identifies the public record with reasonable particularity. *Id.*

**{22}** Plaintiff's June 2007 request contained the following language:

Dear Records Custodian:

This firm would like to inspect and copy the following *documents*, which we are requesting pursuant to the Inspection of Public Records Act, § 14-1-1, et seq.:

1.      All *documents* relating to the program *The Water Haulers*, which was broadcast by KNME-TV. The exact date of the initial broadcast is not known to us, but it was broadcast on various dates in January, 2007.

2.      All *documents* relating to the website *The Water Haulers*. This website can currently be accessed at the following link: . . . . This request includes all of the *related pages* or *documents* included in or linked with this website. We are willing to have this copied in electronic form, such as a DVD.

(Emphasis added.)

**{23}** The plain text of Plaintiff's June 2007 request does not specify tapes or recordings and we agree with Defendants that the form of public records Plaintiff sought to inspect was "documents," and not "audio or visual files." Hence, the district court did not err when it determined—as a finding of fact supported by substantial evidence, here in the form of the specific words employed by Plaintiff in its June 2007 request—that Plaintiff did not seek inspection of the eight-minute video or master tapes. We look next

to whether Plaintiff's request, as a matter of law under IPRA, nonetheless included the master tapes and eight-minute video.

## B.     Plaintiff Requested "All Documents" Not "All Records"

**{24}**    Plaintiff argues the video and master tapes were responsive to the June 2007 request because it requested "all records" and that, under Section 14-2-6(E) (1993), electronic recordings are a form of public records. Amicus Curiae New Mexico Foundation for Open Government joins Plaintiff in this argument, asserting that IPRA defines "public records" very broadly. Defendants argue IPRA does not use the terms "documents" and "public records" interchangeably and that construing the term "documents" to necessarily include "audio or visual" records conflicts with Section 14-2-8(C) (1993), which requires a person making a written request to inspect public records to do so with reasonable particularity.

**{25}**    As an initial matter, we agree with Amicus that IPRA defines "public records" very broadly and with Plaintiff that electronic recordings fall within the definition of public records under Section 14-2-6 (E) (1993). But here, Plaintiff chose to employ language in his request that did not ask to inspect electronic recordings of any sort, or even generically to inspect all public records related to the matters upon which the June 2007 request was premised. Rather, Plaintiff made a more specific request to inspect "all documents," which are but one category of available items that qualify as public records under Section 14-2-6(E) (1993). Therefore, given that Plaintiff's June 2007 request opted to restrict the category of public records available to it under IPRA, Plaintiff's ensuing reliance on IPRA's broad and inclusive interpretation of "public records" is unavailing.

**{26}**    Nonetheless, and keeping in mind that courts must "construe IPRA in light of its purpose and interpret it to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished by it[,]" *Faber*, 2015-NMSC-015, ¶ 8 (internal quotation marks and citation omitted), we consider whether the Legislature intended a specific request for documents to be one that should instead be interpreted as a specific request for public records under Section 14-2-6(E) (1993), and as such to automatically incorporate a request for videos, tapes, or electronic recordings. Because the term "documents" was not defined in Section 14-2-6 (1993), we must determine its meaning in the context of the statute. To ascertain legislative intent, we look first to a word's plain and ordinary meaning. *See State v. Ogden*, 1994-NMSC-029, ¶ 33, 118 N.M. 234, 880 P.2d 845 ("When a statutory term is not defined, it must be given its plain and ordinary meaning.")

**{27}**    When interpreting words that the Legislature has not defined in a statute, we often use dictionary definitions to ascertain their plain and ordinary meaning. *See State v. Stephenson*, 2017-NMSC-002, ¶ 16, 389 P.3d 272. The traditional meaning of "documents" is a plural form of "[s]omething tangible on which words, symbols, or marks are recorded. Most traditionally, of course, the term embraced any piece of paper with information on it." *Black's Law Dictionary* 588 (10th ed. 2014) (citations omitted). With

the advance of modern technology, the term is also understood to embrace information stored on computers, electronic storage devices, or other mediums. *Id.* Elsewhere within IPRA, the Legislature has used a definition of "documents" comporting with the more traditional definition. *See, e.g.*, § 14-2-1(A)(9)-(10) (2005) (referring to "documents" as papers on which information regarding a veteran's discharge has been recorded); § 14-2-9(B)(2) (1993) (limiting the amount of fees per page of a document a public body can charge a requester).

**{28}** Amicus argues that a records requestor should not be required to identify with exact specificity the type of public records sought for inspection because in most cases, the requestor will not know what types of records exist. While we agree that a requestor may not know what types of public records exist and are in the possession of a given public body, Section 14-2-8(C) (1993) nonetheless requires a requestor to "identify the records sought with reasonable particularity[,]" and Section 14-2-6(E) (1993) illustrates the types of items available for inspection as records, including but not limited to the documents Plaintiff narrowly and specifically expressed a desire to inspect in its June 2007 request. To reiterate, although Plaintiff identified the subject of its inspection request to be *The Water Haulers* program and related websites, it specifically identified the type of public records sought as "documents." If Plaintiff sought to inspect tapes, recordings, and other types of public records, it could have simply requested "all public records," or expressly included the "recordings" category of records permitted under Section 14-2-6(E), but did not.

**{29}** Cognizant that our Supreme Court has emphasized the importance of analyzing a "statute's function within a comprehensive legislative scheme" and not to consider subsections "in a vacuum[,]" *State v. Rivera*, 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939, we hold that when a requester elects to identify the specific type of public record sought for inspection, a public body, and its records custodian, is entitled to rely on the self-imposed, limited nature, of the request made, and is not liable for damages, costs, and attorney fees for failing to produce types of public records subject to inspection under IPRA but excluded or not identified with reasonable particularity in a given IPRA request. *See* §§ 14-2-9(B), 14-2-11(C), 14-2-12(D).

**{30}** Plaintiff also makes a cursory argument that attorneys and judges often use the terms "documents" and "records" interchangeably and that the two terms are synonymous in the legal profession. We find no merit to this argument as the issue in this case involves the Legislature's definition of "public records" and intended meaning of the term "documents" within IPRA. Additionally, Section 14-2-6(E) (1993) identifies "documents" along with other items, as forms of, not synonyms for, public records.

**{31}** Finally, Plaintiff argues that the master tapes were included in the June 2007 request because it was the public body's duty to identify public records relating to its request, and in an August 16, 2007 letter to Defendants, Plaintiff provided specific examples of the particular type of documents Plaintiff thought were being withheld. Yet, even the August 16, 2007 letter on which Plaintiff relies does not include a request for electronic recordings. Rather, the letter provides that the following types of "documents"

were not provided: (1) records of actual payments made by the State, tribe, or other sponsors, showing the amounts paid by each; (2) e-mails, memos, and internal or external correspondence including other "documents" of this sort; (3) scripts or outlines; and (4) documents relating to the broadcasting of the program on other stations. Even had the letter clarified that Plaintiff was requesting recordings, Plaintiff offers no argument or authority to explain why a letter sent two months after an inspection request is delivered to a public body, relates back and expands the scope of a request. We do not review undeveloped arguments or those where no authority is cited in support of the issue. *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶¶ 70-71, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)); *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. We accordingly reject this argument.

**C.      An IPRA Enforcement Complaint Enforces the Right to Inspect Requested Records Which Have Been Denied or Deemed Denied**

**{32}**   Plaintiff next argues that both recordings fell within the scope of the June 2007 request because the eight-minute video was specifically identified in the subsequently filed IPRA enforcement complaint in district court, and that both recordings were requested "many times" after Plaintiff filed the enforcement action. Amicus argues that if there was a question regarding the scope of Plaintiff's inspection request, the scope was later clarified within the ensuing enforcement complaint, and therefore Plaintiff's June 2007 request can be viewed to incorporate a request for recordings on this basis as well.

**{33}**   To support its argument, Plaintiff directs us to various findings of fact and conclusions of law from the district court's order. One addresses a letter from Plaintiff to Defendants directing Defendants to the complaint for further details regarding some of the documents which had not yet been produced. Others address Plaintiff's January 2014 motion to compel the master tapes; the court order granting the motion; KNME and UNM's compliance with the order; and the district court's conclusion that the master tapes were not requested in the June 2007 request. We interpret Plaintiff's argument to be that its request to inspect the master tapes in a motion to compel, made over three years after it submitted its June 2007 request, was a subject of this enforcement action.

**{34}**   A requestor may file an action to enforce the procedures of IPRA through separate mechanisms. *Faber*, 2015-NMSC-015, ¶ 11. *Compare* § 14-2-11 ("Procedure for denied requests"), *with* § 14-2-12 ("Enforcement"). These sections of IPRA create separate remedies depending on the stage of the IPRA request. *Faber*, 2015-NMSC-015, ¶ 12. Section 14-2-11 provides that:

> C.      A custodian who does not deliver or mail a written explanation of denial within fifteen days after receipt of a written request for inspection is subject to an action to enforce the provisions of the Inspection of Public Records Act and the requester may be awarded damages. Damages shall:

(1) be awarded if the failure to provide a timely explanation of denial is determined to be unreasonable;

(2) not exceed one hundred dollars ($100) per day;

(3) accrue from the day the public body is in noncompliance until a written denial is issued; and

(4) be payable from the funds of the public body.

Section 14-2-12 provides that:

A. An action to enforce the Inspection of Public Records Act may be brought by:

(1) the attorney general or the district attorney in the county of jurisdiction; or

(2) a person whose written request has been denied.

B. A district court may issue a writ of mandamus or order an injunction or other appropriate remedy to enforce the provisions of the Inspection of Public Records Act.

. . . .

D. The court shall award damages, costs and reasonable attorneys' fees to any person whose written request has been denied and is successful in a court action to enforce the provisions of the Inspection of Public Records Act.

{35} IPRA explicitly authorizes the pursuit of enforcement actions when: (1) a requester's written request has been denied, Section 14-2-12(A)(2); (2) a public body fails to permit inspection of an excessively burdensome or broad request within a reasonable period of time, Section 14-2-10; and (3) a requester deems a request denied because inspection has not been permitted within fifteen days. Section 14-2-11(A). Each of these circumstances contemplates an explicit or implicit denial of a request already made. *See* § 14-2-12(A)(2); § 14-2-10; § 14-2-11(A). Therefore, Plaintiff's position that a requester can seek enforcement of a request that has not yet been denied and is instead made for the first time within an enforcement complaint, or in a post-complaint motion, is incongruous with IPRA.

{36} An IPRA enforcement action is a private cause of action that arises when a public body explicitly or implicitly denies a written request to inspect public records. *See* § 14-2-11(A); § 14-2-12(A); *Derringer v. State*, 2003-NMCA-073, ¶ 10, 133 N.M. 721, 68 P.3d 961 (discussing how "a custodian who does not deliver or mail a written explanation of denial within fifteen days after receipt of a written request, is subject to an

action to enforce the provisions of [IPRA]" (internal quotation marks and citation omitted)). Here, Plaintiff's enforcement action was brought to enforce inspection of all records sought in its June 2007 request, and Defendants are not liable in this cause of action for a failure to allow the inspection of any records not requested in the June 2007 request.

**{37}** Plaintiff's position is also incompatible with IPRA's procedures for requesting and responding to public records requests. *See* § 14-2-8(A) (1993) (requiring a person wishing to inspect records to submit an oral or written request to the custodian); § 14-2-8(D) (1993) (requiring a custodian who has received a written request to allow for inspection immediately, but no later than fifteen days *after* receiving a written request, and requiring a written explanation when inspection is not permitted within three business days *after* receiving a request). Read together with the enforcement provisions, these sections reveal IPRA's intent to give public bodies time and an opportunity to respond to an IPRA request before the enforcement mechanisms become available to a requester.

**{38}** Based on the foregoing analysis, we affirm the district court's ruling that the two recordings did not fall within the scope of the June 2007 request and that Defendants' failure to allow inspection of those recordings upon receipt of the June 2007 request did not violate IPRA.

**D.    The District Court Did Not Err in Refusing To Award Plaintiff Additional Damages Under Section 14-2-11**

**{39}** Plaintiff argues the district court improperly resurrected the "rule of reason" to deny statutory damages and asserts the district court's analysis is in direct conflict with our Supreme Court's opinion in *Republican Party*, 2012-NMSC-026, and this Court's opinion in *Edenburn v. New Mexico Department of Health*, 2013-NMCA-045, 299 P.3d 424. Defendants argue they acted reasonably because the rule of reason was recognized when Defendants denied the request and, upon the Supreme Court's abolishment of the rule, Defendants voluntarily provided the previously denied documents.

**{40}** An award of statutory damages under Section 14-2-11 is required when a public body's "failure to provide a timely explanation of denial is determined to be unreasonable." *See* Section 14-2-11(C)(1); *Britton v. Ofc. of Att'y Gen.*, 2019-NMCA-002, ¶ 38, 433 P.3d 320. Whether an explanation of denial is reasonable is a factual determination to be made by the district court, *id.* ¶ 40, and when challenged, we review it for substantial evidence. *See Sheldon v. Hartford Ins. Co.*, 2008-NMCA-098, ¶ 7, 144 N.M. 562, 189 P.3d 695 ("When the trial court's findings of fact are supported by substantial evidence, refusal to make contrary findings is not error." (omission, internal quotation marks, and citation omitted)).

**{41}** In this case, KNME and UNM withheld documents in 2007, claiming a "protection of thought process" exemption. KNME and UNM voluntarily made the documents

available for inspection in 2013, citing changes in the law, specifically the New Mexico Supreme Court's abolishment of the rule of reason and clarification that the "deliberative process privilege" does not exist under New Mexico law. *See Republican Party*, 2012-NMSC-026, ¶¶ 16, 42.

**{42}** The district court determined that KNME and UNM acted reasonably in issuing denials based on the applicable law in 2007, and that the reasonableness of their actions was reinforced when KNME and UNM voluntarily produced the documents in 2013. The district court also found that receipt of the previously denied documents made Plaintiff whole. From these determinations, the district court concluded KNME and UNM did not violate Section 14-2-11(C) in a manner that could support an award of statutory damages when they denied the records in 2007 and later produced them in 2013.

**{43}** *Faber* presented a similar situation to our Supreme Court. In *Faber*, the public body denied a request to inspect records the day after it was received. 2015-NMSC-015, ¶ 3. Even though the denial was based on an invalid IPRA exception, the Court determined that damages under Section 14-2-11 were not available because the public body timely responded to the entire IPRA request and thereby complied with the requirements of Section 14-2-11. *Faber*, 2015-NMSC-015, ¶ 17. Here, as in *Faber*, Plaintiff failed to show that any other responsive documents were withheld without a denial and it was therefore reasonable for the district court to conclude that all Defendants, including KNME and UNM, had fully responded to the June 2007 request by the end of December 2007. Even though KNME and UNM denied inspection of public records based on an invalid IPRA exception, the district court—consistent with *Faber*—determined the denial was reasonable when made in 2007, and Plaintiff has not shown, nor argued, bad faith on the part of KNME and UNM. *See Britton*, 2019-NMCA-002, ¶ 22 (discussing good faith denials from public bodies). We therefore affirm the denial of additional statutory damages under Section 14-2-11.

**E. The District Court Erred When It Denied Costs and Reasonable Attorney Fees Under Section 14-2-12(D)**

**{44}** IPRA's enforcement provision provides that "[t]he court shall award damages, costs and reasonable attorney[] fees to any person whose written request has been denied and is successful in a court action to enforce the provisions of [IPRA]." Section 14-2-12(D). "A district court has broad discretion in setting attorney fees, and an award will not be reversed unless there is an abuse of discretion." *Behrens v. Gateway Court, LLC*, 2013-NMCA-097, ¶ 31, 311 P.3d 822 (alteration, internal quotation marks, and citation omitted). A district court abuses its discretion when "a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. "However, even when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo [and] we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *Harrison v. Bd. of Regents of Univ. of N.M.*, 2013-NMCA-105, ¶ 14, 311 P.3d 1236 (internal quotation marks and

citation omitted). "To the extent Appellant's arguments require statutory interpretation, we apply de novo review." *ACLU of N.M.*, 2016-NMCA-063, ¶ 24.

**{45}** Plaintiff argues the district court abused its discretion when it denied damages, costs, and reasonable attorney fees under Section 14-2-12(D), because Plaintiff engaged in litigation beyond December 2007 that resulted in the production of responsive documents previously denied by KNME and UNM. Amicus similarly argues that Plaintiff is entitled to costs and reasonable attorney fees, because Plaintiff's successful appellate litigation resulted in the inspection of additional responsive documents that had previously been denied. The district court denied Plaintiff costs and reasonable attorney fees for litigation after December 17, 2007, based upon its conclusion that UNM and KNME reasonably denied inspection of the records in 2007 and voluntarily allowed their inspection in 2013. First, with respect to damages, the district court found Plaintiff produced no evidence of "actual damages," and Plaintiff does not challenge this factual finding on appeal. We therefore consider the district court's finding of no damages to be conclusive and do not consider the issue of damages further. *See* Rule 12-318(A)(4) NMRA ("The argument [in a brief-in-chief] shall set forth a specific attack on any finding, or the finding shall be deemed conclusive.")

**{46}** Despite the absence of damages, however, it is true that in order to attain full relief under IPRA, Plaintiff was forced to litigate its standing to enforce the June 2007 request. *See San Juan*, 2011-NMSC-011, ¶ 45. Only upon Plaintiff's doing so did KNME and UNM produce the master tapes, and then only in response to a March 2014 court order. Similarly, ISC and OSE produced the eight-minute video for inspection during trial in November 2015. However, inasmuch as neither of these recordings was determined to be responsive to the June 2007 request, the recordings themselves cannot form the basis for costs and reasonable attorney fees under Section 14-2-12(D). *See ACLU of N.M.*, 2016-NMCA-063, ¶ 27 (discussing how liability for failure to produce a public record in response to an IPRA request hinges on whether the public record was identified with reasonable particularity within the request).

**{47}** Based on the record before us, the only public records produced after the district court's later reversed dismissal of Plaintiff's enforcement complaint that may serve as a basis for an IPRA violation and warrant an award of costs and attorney fees are the documents KNME and UNM made available for inspection in October 2013. While apparently acknowledging that these records were responsive to the June 2007 request, Defendants KNME and UNM argue Plaintiff is not entitled to costs and attorney fees because Plaintiff could have submitted a new IPRA request rather than litigating its standing to enforce its June 2007 request. These Defendants provide no authority for their position that a district court can deny costs and reasonable attorney fees if a Plaintiff could have submitted a new IPRA request, and therefore, we assume none exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2. We reject Defendants' argument that failure to file a second, separate IPRA request negates a requester's entitlement to costs and reasonable attorney fees, where the requester's successful litigation in an IPRA action results in the receipt of responsive public records.

**{48}** We also reject Defendants' claim that Plaintiff's litigation efforts did not lead to Plaintiff's receipt of additional responsive documents in 2013. In *ACLU of N.M.*, we determined that the Legislature's use of the term "successful" in Section 14-2-12(D) evinced an intent to award attorney fees "generated during litigation that secures production of previously denied public records." *ACLU of N.M.*, 2016-NMCA-063, ¶ 35; *Faber*, 2015-NMSC-015, ¶ 31 (stating that a "successful litigant . . . obtains[s] the documents he or she sought in the first place").

**{49}** In *Britton*, we clarified that an award of attorney fees is different from an award of statutory damages because an award of attorney fees seeks to make a Plaintiff whole while an award of statutory damages ensures public bodies comply with IPRA's provisions. 2019-NMCA-002, ¶ 34 ("In other words, Section 14-2-11 is focused on deterring nonresponsiveness and noncompliance by public bodies in the first instance, while Section 14-2-12 is focused on making whole a person who, believing his or her right of inspection has been impermissibly denied, brings a successful enforcement action.").

**{50}** IPRA creates a fee-shifting statutory scheme that "encourages individuals to enforce IPRA on behalf of the public." *Faber*, 2015-NMSC-015, ¶ 32 (internal quotation marks and citation omitted). An award of attorney fees, along with costs and damages, helps ensure the entire IPRA enforcement process is virtually costless to a successful litigant. *Id.* ¶ 31. If a public body does not allow the inspection of public records, even in good faith, those records may later become the "basis for an award of attorney fees in IPRA litigation." *ACLU of N.M.*, 2016-NMCA-063, ¶ 45. To the extent the district court's conclusions of law conflated the reasonableness determination for awarding statutory damages under Section 14-2-11 with the reasonableness of attorney fees awarded under Section 14-2-12, its ruling is based on a misapprehension of law. We therefore conclude the district court abused its discretion when it denied Plaintiff costs and reasonable attorney fees that accrued after December 19, 2007. *See Harrison*, 2013-NMCA-105, ¶ 14.

**{51}** Plaintiff also requested attorney fees for legal work rendered on its first, successful appeal. Plaintiff was not yet a successful litigant under IPRA when it litigated its standing in this Court or in our Supreme Court, and only became so after remand and receipt of previously denied responsive documents. *See Faber*, 2015-NMSC-015, ¶ 31 (explaining that a successful litigant obtains the documents originally sought and that IPRA's damage provisions make the entire process of obtaining those documents "virtually costless"). IPRA mandates an award of reasonable attorney fees to a successful litigant. Section 14-2-12(D) ("The Court *shall* award . . . reasonable attorney fees" to a successful litigant. (emphasis added)).

**{52}** Granted, the question whether Plaintiff requested attorney fees on the first appeal is not addressed in this record. "Ordinarily, principles of finality and judicial economy weigh against the consideration of a claim that could have been, but was not, litigated in a prior proceeding." *Aguilera v. Palm Harbor Homes, Inc.*, 2004-NMCA-120, ¶ 16, 136 N.M. 422, 99 P.3d 672. "However, our Supreme Court has held that where a

party is entitled to attorney fees as a matter of law, the district court must award the fees even where the prevailing party fails to request those fees by formal motion to the Supreme Court." *Id.* We are bound by Supreme Court precedent. *See State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 22, 135 N.M. 375, 89 P.3d 47.

**{53}** Plaintiff is now a "successful litigant" and IPRA's fee shifting provision serves as a statutory basis for an award of reasonable attorney fees accrued in connection with its appeal to establish standing. Rule 12-403 NMRA (1993) provides a procedure for requesting the appellate portion of those allowable fees. *See* Rule 12-403 (1993) ("In all proceedings in the appellate court the party prevailing *shall* recover the party's costs[, to] include . . . reasonable attorney fees for services rendered on appeal in causes where the award of attorney fees is permitted by law[.]" (emphasis added)); *Aguilera*, 2004-NMCA-120, ¶ 16 (recognizing that "where a party is entitled to attorney fees as a matter of law, the district court must award the fees even where the prevailing party fails to request those fees by formal motion" to an appellate court); *A.C. v. C.B.*, 1992-NMCA-012, ¶ 22, 113 N.M. 581, 829 P.2d 660 (holding this Court can only award appellate attorney fees when authorized by statute or appellate rule). We therefore hold Plaintiff is entitled to collect reasonable attorney fees for its first appeal.

**{54}** On appeal, however, this Court is unable to determine the amount of costs and reasonable attorney fees Plaintiff is entitled to for successful litigation after December 2007, or whether attorney fees accrued after KNME and UNM's 2013 document production are reasonable. We therefore remand to the district court to determine the amount of costs and reasonable attorney fees Plaintiff is entitled to under Section 14-2-12(D), including reasonable attorney fees for the first appeal.

**CONCLUSION**

**{55}** We affirm the district court's determination that the master tapes and eight-minute video were not responsive to the June 2007 request and the district court's award of statutory damages under Section 14-2-11. We reverse the district court's denial of costs and reasonable attorney fees accrued after December 19, 2007, and remand to the district court for further proceedings on this issue consistent with this opinion.

**{56}  IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**J. MILES HANISEE, Judge**